UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ANNA MENDOZA, individually and on behalf of J.G. a minor, et al., | ) ) ) | NO. CV-05-327-RHW |
| Plaintiffs, | ) ) ) ) | REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO |
| v. | ) ) | AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF |
| BREWSTER SCHOOL DISTRICT NO. 111, et al., | ) ) ) | $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* |
| Defendants. | ) | |

At the November 14, 2006, telephonic argument of Plaintiffs'
Motion for Award of Attorneys' Fees and Expenses (Ct. Rec. 65),
attorneys Darrell Lee Cochran and Lorena Gonzalez, of Gordon,
Thomas, Honeywell, Malanca, Peterson & Daheim, LLP, represented the
Plaintiffs; attorneys Jerry Moberg, Michael E. McFarland and James
Baker represented Defendants.   Guardian ad Litem (GAL) Timothy
Fennessy also appeared and was excused from further participation.

The court has reviewed and considered the file, including the
Motion, Memoranda and supporting Declarations and attachments.

**BACKGROUND**

In their Complaint, Plaintiffs, who are parents and students,
allege the Brewster School District discriminates against
Latino/Latina students.   It is asserted the discrimination has

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
FEES AND COSTS OF $7,727.34, *INTER ALIA* – 1

occurred on a continuing basis and has been an extremely serious problem within the Brewster School District for many years. Specifically, it is alleged that on November 6, 2003, the School District required up to 27 Latino/Latina students to attend a closed-door meeting in the school's library. The meeting was attended by Defendant Phillips, the Principal of Brewster Junior High School, two Brewster City Police Officers, two school counselors, and three school aides. Parents were not given prior notice of the meeting. Defendants contend that during the fall of 2003, there were numerous fights or assaults off campus and the afternoon before the November 6th meeting, a student was knocked out in a fight witnessed by some school teachers. On the morning of November 6th, Defendants assert, the student who had been knocked out came to school to fight with the student who had assaulted him. There allegedly were about 20 students watching and encouraging the fight.

Although it is not clear whether the door was locked from the inside, the door was locked from the outside barring access to the meeting in the library. According to Plaintiffs, Defendants accused the Latino/Latina students of en mass gang activity, demeaned the students by showing them charts emphasizing the educational achievement gap between non-Latino/Anglo and Latino/Anglo students; and insulted them by stating that the low WASL test scores supported the idea "they were bringing each other down," they showed less respect for one another than Anglo students, and that "they were going to end up working in the orchards like [their] parents." It is asserted the students were prohibited from leaving the library

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* - 2

until each signed a disciplinary contract providing that any future violation of school rules or "involvement in gangs" would be grounds for immediate expulsion or suspension.

Plaintiffs also allege that for a number of years, Latino/Latina students have been subjected to discrimination, racially hostile treatment, racial and national origin harassment, racist comments, and racial epithets, while attending Brewster Junior High.  They assert that the curriculum used by the School District objectively demeans Latino/Latina students.  Teachers, it is alleged, have used racially demeaning language in class, and derogatory jokes about students' race or national origin are tolerated and accepted by administrators and employees in the School District.

An EEOC complaint was filed.  EEOC concluded that the Brewster School District treated students differently because of their race and national origin when they were required to attend the November 2003 meeting.  The School District entered into a Settlement Agreement with the Office for Civil Rights (OCR) in July 2004.  On September 12, 2005, the OCR concluded that the School District completed all the requirements of the Settlement Agreement.

On October 21, 2005, Plaintiffs filed the Complaint in the captioned matter; Defendants answered the Complaint on November 21, 2005.  The matter was referred to the undersigned for a settlement conference/mediation.  After two days of face-to-face negotiations (March 22, 2006, and June 28, 2006) and numerous follow-up calls, most of the Plaintiffs reached a settlement with Defendants through FED. R. CIV. P. 68 offers of judgment by Defendants, made August 3,

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* - 3

2006, which consisted of payment of monetary damages to Plaintiffs, including reasonable attorneys' fees and costs, to be determined by the court, as well as a Consent Order encompassing agreed injunctive relief in favor of Plaintiffs.   During the settlement process, limited discovery, including ten depositions, took place.

On November 9, 2006, the undersigned filed a Report and Recommendation to Chief Judge Whaley for entry of judgment for Plaintiff families Garcia ($15,700), Mendoza ($5,250), Reyes ($19,250), Bejar ($3,500), Mariscal ($19,250), Xhurape ($17,500), and Fonseca ($15,700), for a total of $96,250, plus reasonable fees and costs, and for entry of a Consent Order for injunctive relief. On November 17, 2006, Chief Judge Whaley entered judgment. (Ct. Rec. 119.)   On the same date, the Consent Order also was filed. (Ct. Rec. 120.)   The current issues are before the court by Order Referring to Magistrate Judge (Ct. Rec. 99) for Report and Recommendation.

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

As part of the settlement (Ct. Rec. 63, Ex. A, Defendant's Offer of Judgment), Defendants agreed to pay reasonable attorneys' fees and costs.   The parties disagree as to what is reasonable. Plaintiffs, in their Motion filed October 10, 2000 (Ct. Rec. 65), asked for actual fees through October 9, 2006,[1] of $171,862.59, expenses of $27,757.58, and application of a multiplier of 1.0, which would result in fees and costs of $371,482.76.   Plaintiffs

---

[1]The original Exhibit C, which was lodged, but not filed, reflected fees through October 3, 2006.

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 4

also asked for $6,757.50 for preparing the Motion for Attorneys'
Fees.  On November 13, 2006 (Ct. Rec. 112), Plaintiffs amended their
request to include fees and costs between October 9, 2006, and
November 13, 2006, of $18,757.50.  In addition, before this court is
the Guardian ad Litem's request for fees of $7,660.00 and costs of
$47.34.  (Ct. Rec. 102.)

Counsel took this case on a contingency basis.  The following
is a breakdown of the requested rates and hours for the lawyers and
staff who worked on the case as extracted from the redacted Exhibit
C, filed November 14, 2006:

| NAME (and last time sheet date) | POSITION | RATE/ HOUR | # HOURS | TOTAL |
|---|---|---|---|---|
| Darrell L. Cochran (11/17/06) | Attorney | $300 | 186.5 | $55,950.00 |
| Thomas Vertetis (10/17/06) | Attorney | $200.00 | 28.5 | $5,700.00 |
| Loren Cochran (6/23/06) | Attorney | $185.00 | 128.6 | $23,791.00 |
| Jongwon Yi (12/12/05) | Attorney | $185.00 | 2.4 | $444.00 |
| Jason Amala (11/12/06) | Attorney | $165.00 | 21.3 | $3,514.50 |
| Maria Lorena Gonzalez (11/14/06) | Attorney | $164.40 | 559.6 | $91,996.00 |
| Victor Torres (11/10/06) | Intern | $102.86 | 16.8 | $1,728.00 |
| Carlos Garcia (8/9/06) | Summer Assoc. | $100.00 | 31.6 | $3,160.00 |
| Brooke Johnson (8/11/06) | Summer Assoc. | $100.00 | 1.8 | $180.00 |
| Wendy Allen (12/28/05) | Paralegal | $95.00 | 8.3 | $788.50 |

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION, AND TO AWARD PLAINTIFFS' FEES
OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
FEES AND COSTS OF $7,727.34, *INTER ALIA* – 5

| NAME (and last time sheet date) | POSITION | RATE/ HOUR | # HOURS | TOTAL |
|---|---|---|---|---|
| Katrina Bakke (11/24/06) | Paralegal | $95.00 | .7 | $66.50 |
| Kellie Brown (11/9/06) | Paralegal | $95.00 | 43 | $4,085.00 |
| Heather Spencer (11/13/06) | Paralegal | $88.16 | 68.1 | $6,004.00 |
| Susan DiFilippi (4/6/06) | Clerk | $45.00 | 2.7 | $121.50 |
| Sincere Hankins (11/13/06) | Clerk | $45.00 | 2.1 | $94.50 |
| **Total** | | | | **$197,623.50** |

There was an unaccounted difference of $1,613.09 between the originally requested amount and the amount that is reflected in Plaintiffs' Motion.  Also, there was a difference between the billing summary on page 61 of the originally lodged Exhibit C and the chart provided in Plaintiffs' Motion.  At oral argument, Plaintiffs stated Exhibit C represents the number of hours requested.

At the November 14, 2006, oral argument, Plaintiffs were directed to file a redacted version of Exhibit C (to include timesheets, expenses, and contingency fee agreements).  It was expected that the replacement redacted document would be identical to the original document, which was lodged but never became part of the record (Ct. Rec. 111, Order Denying Motion to Seal, With Instructions), except that the names and other identifiers of the minors would not be visible, and Plaintiffs would add requested fees and expenses from October 9, 2006, to November 13, 2006.  For

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* - 6

1  reasons that are unclear to the court, the replacement Exhibit C
2  does not track the original Exhibit C after page 36. Defendants, in
3  timely responding to Plaintiffs' Motion for fees and costs,
4  necessarily worked from the unredacted timesheets served upon them,
5  since the oral and written order addressing Plaintiff's Motion to
6  seal Exhibit C had not yet been addressed.

7      The court has attempted to reconcile the references in
8  declarations to exhibits and briefing. Some of these references
9  could not be located in the file. To the extent it may be necessary
10 to readdress the parties' arguments during the objections period to
11 this Report and Recommendation, it is recommended that the parties
12 be directed to specifically reference the filed pleadings by court
13 record, description, page and date. To the extent the parties may
14 seek to supplement the record, it is recommended the parties be
15 directed to show cause why they should be permitted to supplement
16 the record. If permission is given to supplement the record, for a
17 variety of reasons, including the tardiness of the request, it is
18 recommended that no fees or costs be awarded for supplementation of
19 the record.

20     In addition, since there may be future requests for fee awards
21 by Plaintiffs who are not the subject of the current Motion, and to
22 avoid some of the challenges necessarily addressed in this Report
23 and Recommendation, it is recommended counsel for the remaining
24 Plaintiffs be directed to maintain simultaneous fee and expense
25 records in greater detail than those that are the subject of the
26 pending motion.

27

28 REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
   PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
   OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
   FEES AND COSTS OF $7,727.34, *INTER ALIA* – 7

**APPLICABLE STANDARDS**

Here, Plaintiffs brought their action under Title VI, 42 U.S.C. § 2000d, *et seq.*, and 42 U.S.C. § 1983, and sought reasonable attorneys' fees under § 1988. Thus, the appropriate authority for reviewing the reasonableness of the fees is case law applying § 1988.

Section 1988 is considered a federal fee-shifting statute. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In setting the amount of an attorney's fees award under § 1988, a district court must utilize the "lodestar" method of calculating the award, which is accomplished by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Tutor-Saliba Corp. V. City of Hailey*, 452 F.3d 1055, 1064 (9th Ci. 2006). The Supreme Court has established "a strong presumption that the lodestar represents the reasonable fee." *Dague*, 505 U.S. at 562 (citation and internal quotation marks omitted). Although in most cases the lodestar figure is presumptively a reasonable fee award, the court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within the computed reasonable fee. *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). Adjustments to the lodestar should be made only in rare cases. *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992). In *Guam Society of Obstericans and Gynecologists v. Ada,* the Ninth Circuit rejected the notion that *Dague* stood for the proposition that a multiplier may never be applied to increase a fee award; instead it reiterated that a fee applicant can recover more than the lodestar figure where the applicant has met "the burden of

showing that 'such an adjustment is *necessary* to the determination of a reasonable fee,'" 100 F.3d 691, 697 (9th Cir. 1996) (emphasis in original) (citations omitted).

Under § 1988, the burden is on the Plaintiff to demonstrate "that the requested rates are in line with those [rates] prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Id.* at 892 n.5.

A reasonable attorney fee award "controls what the losing defendant must pay, not what the prevailing party must pay his lawyer." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990).

**HOURLY RATES**

A reasonable hourly rate is what would be billed by "reasonably competent counsel." *Venegas,* at 86. Courts should compare the requested rate with the "prevailing market rate," which is the rate "prevailing in the community for similar services of lawyers with reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895. Courts should take into consideration discounts commonly given to clients and an attorney's ability to collect fees from its clients. *Id.* ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.")

In determining the reasonable rate, courts have looked into the

novelty and complexity of the issues; the special skill and experience of counsel; the quality of representation; results obtained and the contingent nature of the fee agreement.[2] *Morales v. City of San Rafael*, 96 F.3d 359, 363-65 (9th Cir. 1996).

Plaintiffs submitted Declarations from attorneys Ken Isserlis and Robert Dunn in support of the reasonableness of their rates. Plaintiffs argue that for the most part the rates billed are the prevailing market rates for lawyers involved in litigation of this type and complexity practicing in the Eastern District of Washington. Defendants point out that Mr. Isserlis does not state what the prevailing rate for civil rights attorneys is, and Mr. Dunn only states that he bills between $350-$400. [3] Mr. Dunn provides examples of attorneys fees that were awarded in particular cases in Spokane County, stating that courts will award their usual and customary billing rates. In one case, Mr. Dunn received $241,000 for a case that went to trial. Defendants assert that Mr. Dunn's

---

[2]These factors were once considered part of the 12-factor test set forth in *Kerr*. The Ninth Circuit has held that these factors have been "subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

[3]Mr. Dunn has been "a long time member of the Washington State Trial Lawyers Association; [is] named yearly as one of 'America's Best Lawyers'; [has] been named as a Washington State 'Super Lawyer'; and recently both in 2005 and 2006 voted as Spokane's number one business lawyer and general litigation attorney by [his] peers." (Ct. Rec. 70.)

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 10

rate is hardly the prevailing market rate in Spokane.   Plaintiffs argue that Mr. Cochran's rates are appropriate, given his experience on the *Pullayup* case,[4] and the fact that the case settled so quickly.   Mr. Cochran states that because of his experience in this case, he could prosecute this case more efficiently.

Mr. Isserlis[5] relies on his experience to conclude that civil rights cases generally involve complex factual issues requiring extensive and expensive discovery, that the cases frequently involve vigorously disputed liability and/or damages issues; and there is always a wide disparity in resources between the often low-income plaintiffs and the well-financed government entity defendants and their insured.

Here, however, there was not extensive and expensive discovery and Defendants did not vigorously dispute liability.   On the contrary, Defendants attempted to settle early.   As Plaintiffs' law firm was the recipient of over $1 million in fees in the *Pullayup* case, it does not appear that Plaintiffs were hampered financially

---

[4]Plaintiffs characterize the Puyallup School District litigation as a case that took nearly two and a half years and consisted of over 100 depositions and over a dozen summary judgment motions resulting in attorneys fees for Plaintiffs' counsel of about $1.5 million.   The case involved 55 African American Plaintiffs, and settled for $7.5 Million.   Plaintiffs' counsel in this action was not the lead attorney in that case.

[5]Mr. Isserlis has practiced law for 23 years and is a principal in the law firm of Lee & Isserlis, P.S.   (Ct. Rec. 69.)

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* - 11

1  in prosecuting this case.

2      Mr. Isserlis relies on the number of staff and lawyers involved

3  to conclude that this case was extremely time and labor intensive.

4  In reviewing the records, it appears that many times, two lawyers

5  for Plaintiffs participated in most of the meetings.  Mr. Isserlis

6  also relies on the factors provided in the Washington Rules of

7  Professional Conduct as authority for determining whether the rates

8  are reasonable.

9      Defendants submitted declarations from attorneys Michael

10 McMahon[6] and James B. King.  Defendants take issue with all the

11 rates charged.  Defendants point out that Mr. Cochran has only 13

12 years of experience, is a BV rated attorney, yet is seeking rates

13 that are much higher than the rates charged in the Spokane area.

14 Defendants argue Plaintiffs have failed to provide justification for

15 the associate and paralegal rates, other than general statements by

16 Plaintiffs' experts that these rates are reasonable.

17     Mr. King[7] states that the highest hourly rate he has charged a

18 client was $250, on an emergency basis, with no prior relationship

19 with firm and who resided out of state.  None of the senior partners

20 _____

21     [6]Mr. McMahon, a principal in the law firm of Etter, McMahon,

22 Lamberson & Clary, P.C., has practiced law for 30 years and is "AV"

23 rated by Martindale-Hubbell.  (Ct. Rec. 88.)

24     [7]Mr. King, a principal in the law firm of Keefe, King & Bowman,

25 P.S., has been practicing law for 28 years, is "AV" rated by

26 Martindale-Hubbell, and is a member of the American College of Trial

27 Lawyers.  (Ct. Rec. 89.)

28 REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
FEES AND COSTS OF $7,727.34, *INTER ALIA* - 12

in Mr. King's firm charged higher than $185 in 2005 and 2006.  Rates
for associates range from $110 to $135.  Paralegals billed at $55 an
hour.  Mr. King concludes that the civil rights case was neither
novel or complicated.  Defendants appeared to be cooperative and
forthcoming.  Mr. King also criticizes Plaintiffs' billing for what
is routinely recognized as office overhead, including clerical work
involving photocopying, file organization, preparation of mailings,
and similar tasks.  Mr. King states that generally a lawyer's hourly
rate is established to afford a lawyer a reasonable level of income
and to allow the lawyer to pay for necessary overhead.  Mr. King
concludes that Plaintiffs are asking for an excessive hourly rate,
and for payment of services that would be included in that rate.
Mr. King also points out it appears that multiple individuals
participated in the same event or proceedings, particularly where
the event involved paralegals, junior associates, interns or summer
clerks.  It is Mr. King's position it is not appropriate to bill for
the time of junior associates and interns, unless that person
significantly added value to the case, as opposed to participating
to gain training and experience.

      Each of the attorney affiants for Plaintiffs and for Defendants
is experienced and knowledgeable as to the prevailing community
hourly rates and carries great weight with this court.  While the
hourly rates submitted through Plaintiffs' Motions are on the high
end, the undersigned is unable to conclude they are unreasonable.
This is particularly so, given the fact co-counsel and one staff
member are bilingual and, therefore, wore two hats.  For several
Plaintiffs, English is a second language.  Moreover, in the age of

1   internet, video-conferencing and telephonic hearings, the geographic

2   distinction of Western and Eastern Washington is diminishing.

3   Eastern District records reflect that over two-thirds of the

4   attorneys who have been active in the Eastern District of Washington

5   in recent years are not from Eastern Washington, and at least half

6   are from Seattle.  Accordingly, it is recommended that the portion

7   of Plaintiffs' Motion as to hourly rates be granted.

8   **REQUESTED NUMBER OF HOURS**

9        Reasonably competent counsel do not bill hours that are

10  "excessive, redundant or otherwise unnecessary," and courts have a

11  duty to eliminate hours it concludes fit this description.  *Hensley*

12  *v. Eckerhart*, 461 U.S. 424, 434 (1983).  When faced with a massive

13  fee application, the district court has the authority to make

14  across-the-board percentage cuts either in the number of hours

15  claimed, or in the final lodestar figure "as a practical means of

16  trimming the fat from a fee application."  *Gates*, 987 F.2d at 1398.

17       Defendants contend there is redundant billing because often two

18  or more attorneys submitted timesheets for the same activity.  The

19  work of more than one attorney on the same litigation task does not

20  automatically mean overstaffing has occurred. See, *e.g.*, *In Re*

21  *Segal*, 145 F.3d 1348 (D.C. Cir. 1998);  *New York State Assn. for*

22  *Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2$^{d}$ Cir. 1983);

23  *Bowman v. Pulaski County Special School District,* 723 F.2d 640, 646

24  (8th Cir. 1983).  While the descriptions of the various activities

25  could have been more clearly set forth in the timesheets, and in

26  greater detail, the undersigned is unable to conclude that the

27

28  REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
    PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
    OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
    FEES AND COSTS OF $7,727.34, *INTER ALIA* - 14

1   various activities were overstaffed, except as discussed *infra.*[8]

2      Purely clerical tasks are not recoverable at attorney or

3   paralegal rates. See *Missouri v. Jenkins*, 491 U.S. 274 (1989).

4   That is, where paralegal staff perform purely clerical tasks, such

5   as photocopying and envelope stuffing, these activities cannot be

6   billed by attorneys or paralegals at their hourly rate.

7      In opposing Plaintiff's fee request, Defendants also complain

8   that Plaintiffs' campaign of feeding the media misinformation "has

9   resulted in misleading newspaper articles." (Ct. Rec. 90, J. Baker

10  Decl. at 8, 9.)  Defendants expressed frustration that Plaintiffs'

11  lead counsel was quoted in THE SPOKESMAN REVIEW on October 14, 2006, as

12  saying "In Brewster, Latino students had been relegated to second-

13  class citizen status unlike anything seen on the West Side.  Latinos

14  were resigned to taking orchard jobs and not questioning their place

15  in society."[9]   *Id.* at 9.   Plaintiffs respond that Defendants

16

---

17      [8]On one entry, an attorney billed 19.5 hours in one day for

18  deposition preparation and travel to Brewster to take the

19  deposition, and included "[g]et[ting] up in [the] morning."  It

20  appears that co-counsel accompanied counsel to Brewster that day and

21  billed 14 hours; co-counsel did not bill for post-deposition work on

22  the same date.  It is assumed that the notation for "[g]et[ting] up

23  in [the] morning" is descriptive only and not intended as billable

24  time.

25      [9]It is assumed this quote in the printed news was an inaccurate

26  typo and did not properly reflect Plaintiffs' counsel's remarks or

27  meaning since implying a blanket depiction of every non-minority

28  REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
    PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
    OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
    FEES AND COSTS OF $7,727.34, *INTER ALIA* - 15

indignation is disingenuous in light of Defendants' own media manipulation by discussing in court pleadings confidential settlement negotiations which resulted in articles in Brewster's QUAD CITY HERALD, November 9, 2006, which placed Plaintiffs in a bad light. (Ct. Rec. 115, D. Cochran Supp. Decl. at 2.)

Contacts with the press that are deemed necessary to the litigation can be compensable. As quoted in Martin A. Schwartz & John E. Kirklin, SECTION 1983 LITIGATION STATUTORY ATTORNEY'S FEES, 3d Ed. Vol. 2 (2006-2 Cum. Supp.), the Ninth Circuit has noted:

> After a review of the relevant billing records, we conclude that the district court did not abuse its discretion by granting fees for media and public relations activities insofar as those activities contributed directly and substantially to plaintiff's attainment of favorable jury verdicts. The hours spent by intervenor publicizing those verdicts were not compensable, however. . . . Therefore, on remand the district court must deduct from the fee award those hours devoted to post-verdict media activities.

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9 th Cir.), *cert. denied*, 528 U.S. 1061 (1999). In this action, while the parties certainly are free to discuss the captioned matter with the media, the court is unable to conclude that the contacts inured to the benefit of the clients. Accordingly, those costs should not be shifted to the opposing parties. However, for the reasons stated earlier, the court is unable to conclude that those costs are included in the redacted Exhibit C. As such, there is no recommendation to adjust fees as to this issue.

person who does not live on the "West Side" of the state would be stereotyping that is beneath an officer of the court.

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* - 16

1    In reviewing the billing sheets, it appears that Plaintiffs
2   have included work that should not be paid at this time by
3   Defendants.   For example, there are entries for work done on the
4   Amended Complaint in August 2006.   The Amended Complaint added new
5   parties to the Complaint.   It was filed after the offers were
6   accepted.   There also is paralegal time for sending out letters to
7   new clients.

8    The following hours should be disallowed as follows:

9    **March 24, 2006**: Calls to prosecutor's office regarding motion
10  to dismiss hearing at a cost of **$38.00**.   This entry not only appears
11  to be an administrative task, but also does not appear to relate to
12  the captioned matter.

13   **March 27, 2006:** Prepare for a motion to suppress, etc., at a
14  total cost of **$573.50**.   Again, this does not appear to relate to the
15  captioned case and appears to relate to a separate criminal matter.

16   **March 30, 2006:** Motion to amend complaint add new plaintiffs,
17  at a cost of **$330**.   This task related to Plaintiffs who are not the
18  subject of this Motion.

19   **April 4, 2006:** Reviewing and revising the motion to amend at a
20  cost of **$66**.   Again this appears to relate to Plaintiffs who are not
21  the subject of the Motion.

22   **April 4, 2006:** Conference regarding addition of new Plaintiffs
23  to the Complaint **$49.50**.

24   **April 10, 2006:** Scheduling depositions at **$104.50**.   Without
25  more, this task appears to be administrative.

26   **April 11, 2006:** Subpoena preparation and scheduling emails at
27  a cost of **$190**.   This appears to be an administrative task.

28  REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
    PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
    OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
    FEES AND COSTS OF $7,727.34, *INTER ALIA* - 17

**April 12, 2006:** Scheduling depositions at **$228**.  This reflects administrative duties.

**April 13, 2006:** Deposition scheduling at **$380**.  This reflects administrative duties.

**April 27, 2006:** Letter to new client with retainer at a cost of **$19**.  This does not appear to relate to the Plaintiffs who are the subject of this Motion and also appears to reflect administrative tasks.

**May 1, 2006:** File organization for **$123.50**.  This reflects administrative tasks.

**May 3, 2006:** Deposition date setting for **$142.50**.  Again this reflects administrative tasks.

**May 4, 2006:** Telephone call to potential client returning attorney/client agreement at a cost of **$19**.  This figure seems to relate to a Plaintiff who is not the subject of this Motion and represents administrative tasks.

**May 4, 2006:** Email regarding deposition notice **$47.50**.  This appears to relate to administrative tasks.

**May 15, 2006**: Copy and distribute documents **$4.50**.  This is an administrative task.

**May 23, 2006:** Discussions regarding potential new clients amended complaint, **$19**.  This does not relate to movants and appears to be an administrative task.

**May 24, 2006:** Conference regarding deposition and telephone call regarding a potential new client, **$47.50**.  This appears to be unrelated to the current motion and represents administrative activities.

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 18

1    **May 25, 2006:** Deposition/IME practice, **$57**. This appears to be
2  an administrative task.

3    **June 6, 2006:** Reviewing truancy laws, **$825.** This does not
4  appear to relate to the captioned matter.

5    **June 7, 2006:** A phone call with prosecuting attorney Hunt
6  regarding appearance at truancy contempt hearing, **$214.50.** This
7  appears to be unrelated to the captioned matter.

8    **June 7, 2006:** Appear for truancy hearing and argue motion for
9  continuance, **$181.50.** This does not appear to be related to the
10 captioned matter.

11   **June 8, 2006:** Retainer agreement letter to client, **$76.** This
12 does not appear to relate to the Plaintiffs who are the subject of
13 the attorneys' fees Motion, and also appears to include
14 administrative tasks.

15   **June 19, 2006:** Sending out correspondence, **$38.** This appears
16 to be an administrative task.

17   **June 21, 2006:** Preparing deposition exhibit binder, **$63.00**.
18 This appears to be an administrative task.

19   **June 22, 2006:** Scheduling, **$19**. This appears to be an
20 administrative task.

21   **July 24, 2006:** Truancy case, **$300**. This does not appear to be
22 part of the current lawsuit.

23   **August 3, 2006:** Drafting motion to amend complaint, **$1,353**.
24 The motion to amend does not appear to have benefitted the current
25 Plaintiffs' efforts or relate to the settling Plaintiffs.

26   In sum, the above fees, totaling **$5,509**, related to the Amended
27 Complaint, administrative tasks, unrelated cases, should be excluded

28 REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
   PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
   OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
   FEES AND COSTS OF $7,727.34, *INTER ALIA* - 19

1  from the fee award.

2  **MULTIPLIER**

3      **Plaintiffs:**

4      Under Supreme Court precedent, *Pennsylvania v. Delaware Valley*

5  *Citizens' Council* , 478 U.S. 546, 565 (1986), the court, in

6  "exceptional" circumstances, can enhance the lodestar fee.

7  Plaintiff urges this court to impose a multiplier for the following

8  reasons:

9      **(1)  Early Resolution of the Case.**

10     Plaintiffs appear to argue that their counsel deserves a 1.0

11 multiplier because of the early resolution of this case. As

12 Defendants point out, the quick settlement was due in part to the

13 willingness of Defendants to settle, and it was Defendants who

14 requested referral to a settlement judge to facilitate the process.

15     **(2)  Complex Civil Rights Case Involving Multiple Parties.**

16     Plaintiffs argue that the factual analysis was detailed and the

17 legal analysis was complex.   There was one incident in which

18 Hispanic students were profiled and treated differently from

19 similarly situated students, due to their race.   The number of

20 Plaintiffs was not so numerous as to add to the complexity,

21 especially since much of the case centered around the one event.

22 Plaintiffs also sought to address the widespread racism that they

23 alleged was prevalent in the School District.   The School District

24 agreed early on that there were problems and expressed its

25 willingness to address those problems through a consent decree.

26     Plaintiff argues that the case was difficult because many of

27 the Plaintiffs only spoke Spanish.   This is so; on the other hand,

28 REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
FEES AND COSTS OF $7,727.34, *INTER ALIA* – 20

one of the lead counsel was a Spanish speaker, and Plaintiffs had staff who spoke Spanish.    Thus, this issue is addressed by permitting Plaintiffs' requested hourly rate.    See discussion, *supra*, at 13-14.    In addition, where necessary, an interpreter was hired and those expenses have been included with the requested costs.

### (3) Case Involved Extensive Travel.

Plaintiffs argue that because their counsel were located in Tacoma, they had to expend a great deal of travel time to investigate and prosecute this case.    According to the time sheets, however, counsel were paid at their billable rates for the travel, portal-to-portal.    See, *e.g.*, entry for October 29, 2006, 9.3 hours at \$300/hour, for a total of \$2,790 for preparing for hearing and traveling to Spokane.    Thus, this factor is subsumed in the lodestar fee since it is reflected in the number of billable hours. Therefore, the extensive travel would not factor into an enhancement to the fee.

### (4) Required Mediation Involved Significant Time, Labor, and Depositions.

Plaintiffs argue that "mandatory mediation conferences and subsequently ordered depositions required Plaintiffs' counsel to expend significant time, labor and expense," presumably because counsel was located in Tacoma and Plaintiffs were located in Wenatchee.    Taking depositions, and participating in mediation are typical duties for counsel.    Only ten depositions were taken. Participation in these activities, under the circumstances of this case where the settlement negotiations were successfully concluded,

1  does not require an enhancement to the fees that would be awarded

2  under the lodestar calculation.

3      **(5)  Riskiness and Undesirability of Case**.

4      Plaintiffs appear to be arguing many lawyers would not want to

5  represent the Latino/Latina population.  Plaintiffs also state the

6  contingency nature of the case requires the application of the

7  lodestar.  This is incorrect.  The U.S. Supreme Court has made it

8  clear that an enhancement for contingency is not "compatible with

9  [certain] fee-shifting statutes."  *Dague*, 505 U.S. at 565.

10     It is difficult to accept Plaintiffs' argument that they should

11 receive double fees because counsel represented an allegedly

12 "undesirable" population.  The undersigned is confident that there

13 would have been many sensitive and competent counsel from throughout

14 the State who would have considered it an honor to represent

15 Plaintiffs in the captioned matter.  There is nothing in the record

16 to suggest that Plaintiffs had trouble finding counsel.  Instead,

17 Defendants suggest that a civil rights advocate approached the

18 Plaintiff parents to get them interested in the lawsuit.

19     None of these factors creates an exceptional circumstance that

20 would require an enhancement to the lodestar calculation.

21     **Defendants:**

22     **(1)  Size of the Damages Award**.

23     Defendant emphasizes that the amount of requested attorneys'

24 fees is grossly disproportionate to the amount of damages that

25 Plaintiffs seek.  This argument has been rejected by the Supreme

26 Court.  *See City of Riverside v. Rivera*, 477 U.S. 561 (1986)

27 (upholding attorneys' fees award of $245,456.25 where compensatory

28
REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
FEES AND COSTS OF $7,727.34, *INTER ALIA* – 22

and punitive damages were $13,300 from federal claims and $20,050 from state law claims); *see also, Missouri v. Jenkins*, 491 U.S. 274 (1989) (upholding attorneys' fees of $4 million in school desegregation case); *Quesada v. Thomason*, 850 F.2d 537 (9 th Cir. 1988) ("[t]he district court should not have reduced the attorneys' fees simply because the damage award was small"); *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) (vacating district court's award of attorneys' fees because it was calculated improperly and too low; district court awarded only $20,000 in attorneys' fees even though civil rights plaintiff had won compensatory damages of $17,500 and included "extensive and detailed explanations as to why the lodestar figure of $134,759.75 was a reasonable fee in this case").

**(2)  Reduction for Plaintiffs Who Have Not Settled.**

Defendants argue that the amount of reasonable fees should be reduced by 35% because this is the percentage of Plaintiffs who have not settled.  Plaintiffs have not responded to the argument in the briefing.  Upon questioning at oral argument, Plaintiffs proffered that the analysis in *City of Riverside v. Rivera, supra*, at 513 (analyzing that "the public as a whole has an interest in the vindication of [civil rights])" supports awards of fees for background discovery.  As such, Plaintiffs ask that the court not reduce the fees, and particularly not by 35%.  The undersigned concludes it would have been necessary, in any event, to have done much of the same discovery, if for no other reason than to corroborate the allegations.  Moreover, the discovery between March 22, 2006, and June 28, 2006, which included ten depositions, was

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 23

done at the direction of the undersigned to facilitate and inform the settlement discussions. Accordingly, those fees should be permitted. The undersigned does not recommend a reduction of 35% because of the Plaintiffs who have not settled. Instead, a reduction of 5% is recommended through the date of filing the Motion, and after excluding the administrative tasks and other disallowed fees as discussed earlier. That is, $171,862.59 less $5,509 = $166,353.59, less $8,317.68 (.05 x 166,353.59) = $158,035.91.[10]

**(3)  Relative Success.**

Defendants argue that initially Plaintiffs sought more than $8.5 million in damages. Given that the settlement result is less than $100,000, Defendants conclude that Plaintiffs were not that successful in obtaining results for their clients. The undersigned disagrees. Defendants also state that many of the concessions in the Settlement Agreement were agreed when the Office of Civil Rights conducted its investigation, which was before the filing of the Complaint in this action. However, the Consent Order negotiated by the parties involves a great deal more than the OCR settlement document.

---

[10]Plaintiffs also are asking for fees for prosecuting the case for the remaining new Plaintiffs, (added through filing Amended Complaint, sending letters to newly added Plaintiffs). As discussed earlier, at 17–19, these charges should be deducted from the total figure.

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 24

**ADDITIONAL FEES, SINCE OCTOBER 9, 2006, RELATED TO MOTION FOR FEES**

In Plaintiffs' Motion, the request for fees was made related to bringing the Motion, for $6,757.50, for time expended on that activity through October 9, 2006. In his Second Supplemental Declaration (Ct. Rec. 112, filed November 13, 2006), Mr. Cochran avers that between October 9, 2006, and November 13, 2006, he and Ms. Gonzalez accrued 85.7 hours addressing Plaintiffs' fee request, responsive to Defendants' opposition, including portal-to-portal travel time between Tacoma and Spokane, for a total of $18,757.50.[11] Under the case law, disagreements as to attorney fees are not to become mini-trials or "second major litigation." *Hensley*, 461 U.S. at 437. On the other hand, co-counsel Gonzalez facilitated communication with the Plaintiffs for whom English is a second language. As such, some of her time was necessary and of benefit for the clients in addition to Mr. Cochran's time. It is recommended Plaintiffs be awarded, in addition to the requested $6,757.50 (hours accrued before October 10, 2006, by Mr. Cochran and Ms. Gonzales for bringing the Motion for fees), Mr. Cochran's time of 34.2 hours, that is $10,260.00, and 10 hours for co-counsel Gonzalez, that is, $1,650.00, for a total of $18,667.50, to address the fee and expenses request.

---

[11]Plaintiffs aver that between October 9, 2006, and November 13, 2006, Mr. Cochran expended 34.2 hours at $300/hour, for a total of $10,200.00; Ms. Gonzalez, 51.5 hours at $165/hour for a total of $8,497.50.

**GUARDIAN AD LITEM**

Mr. Fennessey requests $7,707.34 (38.30 hours at $200/hour and $47.34 costs). (Ct. Rec. 102.) The parties do not dispute this amount, and the undersigned finds this amount to be reasonable. In addition, as the GAL appeared briefly, at the request of the court, for telephonic oral argument, November 14, 2006, as to fees, he also should receive $20 for .1 hour, for a total of $7727.34.

**EXPENSES**

The undersigned has reviewed the costs and expenses, and Defendants' objections to those expenses, and concludes Plaintiffs' requests are reasonable, and reimbursable, except as follows.

The following expenses should be excluded from the total expenses allowed:

**March 23, 2006**: Hotel expenses for clients, **$719.10.** The parties have not provided authority that would permit an award of client travel and subsistence.

**May 23, 2006:** Expert retainer to Yolanda Flores Niemann of **$2,500**. At this point, there does not appear to be a suggestion that her fee contributed to the settlement in this case, there is no contention that Ms. Niemann has provided a work product, and there is no documentation of services performed.

**May 25, 2006:** Transportation via Northwest Limo of clients from Brewster to Wenatchee, **$1,275.00**. The parties have not provided authority that would permit an award of client travel.

**June 9, 2006:** Mileage for attorney Gonzalez for travel to and from Okanogan for hearing, **$219.06.** This hearing does not appear from the record to relate to the captioned matter.

**June 27-28, 2006:** Meals for attorney D. Cochran on June 27, **$232.16**, on June 28th, **$92.00**, the bar on May 27th for **$23.00**, and June 27th for **$28.16**, for a total of **$375.32**. These expenses are not sufficiently justified in the timesheets and in the description for the expenses, except that the court notes from the docket sheet and recalls counsel had to be in a settlement conference in Spokane throughout the day of June 28, 2006, which meant traveling to Spokane on June 27, 2006. The **$375.52** should be reduced to **$100.00** to cover dinner on June 27, 2006, and counsel's meals on June 28, 2006.[12]

In sum, $4,988.48 should be excluded from the requested expenses. It is recommended Plaintiffs be awarded $22,769.10 ($27,757.58 less $4,988.48) for expenses and be awarded expenses and fees of their expert, Mr. Isserlis, in the amount of $819.00, who served as affiant in support of the Motion for Award of Attorneys' Fees and Expenses. (Mr. Dunn does not seek reimbursement.)

**CONCLUSION**

**IT IS RECOMMENDED:**

1.    That the court find the hourly rates to be reasonable.

2.    The court find the number of hours, including those for preparation of the Motion for Award of Attorneys' Fees and Expenses, to be reasonable, except for the hours related to the Amended Complaint, those related to new clients, and those related to certain administrative and other activities as set forth above.

---

[12]The court was unable to locate these expenses on the redacted Exhibit C.

REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION, AND TO AWARD PLAINTIFFS' FEES OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM FEES AND COSTS OF $7,727.34, *INTER ALIA* – 27

3.     That the court not apply a multiplier.

4.     That the court award $7,727.34 in fees and costs for the GAL.

5.     That Plaintiff's Motion **(Ct. Rec. 65)** be **GRANTED in part and DENIED in part** as follows.

Plaintiffs be awarded:

```
$158,035.91   Fees
 $18,667.50   Additional fees to address fee/expense Motion
 $22,769.10   Costs
  $7,727.34   GAL Fennessey's fees and costs
     $819.00   Expert Isserlis fees
$208,018.85   Total
```

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate

1   judge with instructions. *United States v. Howell*, 231 F.3d 615, 621

2   (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 73;

3   LMR 4, Local Rules for the Eastern District of Washington.

4       A magistrate judge's recommendation cannot be appealed to a

5   court of appeals; only the district judge's order or judgment can be

6   appealed.

7       The District Court Executive is directed to file this Report

8   and Recommendation and provide copies to counsel for the parties and

9   to Chief Judge Whaley.

10      DATED November 27, 2006.

11

12                    _____S/ CYNTHIA IMBROGNO_____
                       UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
    PART PLAINTIFFS' MOTION, AND TO  AWARD PLAINTIFFS' FEES
    OF $176,703.41, COSTS OF $22,769.10, AND GUARDIAN AD LITEM
    FEES AND COSTS OF $7,727.34, *INTER ALIA* – 29